UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

SAEID SAM KANGARLOU,

Plaintiff,

v.

ALTON AL LOCKLEAR, et al.,

Defendants.

Case No. 2:18-cv-02286-JAD-BNW

**SCREENING ORDER**

Pro se plaintiff Saeid Sam Kangarlou brings this lawsuit for personal injuries he suffered resulting from an alleged attack that occurred while he was playing a slot machine at The Mirage Hotel and Casino in Las Vegas, Nevada. Kangarlou submitted the affidavit required by 28 U.S.C. § 1915(a) showing an inability to prepay fees or costs or give security for them. Accordingly, the court will grant his request to proceed *in forma pauperis*. The court now screens Kangarlou's complaint.

**I. ANALYSIS**

**A. Screening standard**

Upon granting a request to proceed *in forma pauperis*, a court must screen the complaint under 28 U.S.C. § 1915(e)(2). In screening the complaint, a court must identify cognizable claims and dismiss claims that are frivolous, malicious, fail to state a claim on which relief may be granted or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Dismissal for failure to state a claim under § 1915(e)(2) incorporates the standard for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). To survive § 1915 review, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court liberally construes pro se complaints and

may only dismiss them "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

In considering whether the complaint is sufficient to state a claim, all allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys. Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). Although the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.* Unless it is clear the complaint's deficiencies could not be cured through amendment, a pro se plaintiff should be given leave to amend the complaint with notice regarding the complaint's deficiencies. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

### B. Screening the complaint

Kangarlou alleges that on December 5, 2016, after using the spa at the Mirage, he played a "bubble craps machine" in the casino from approximately 7:00 p.m. to 11:55 p.m. (Compl. (ECF No. 1-2) at 3.) Kangarlou did not consume any alcohol that day. (*Id.*) Kangarlou further alleges that at approximately 11:00 p.m., defendant Alton Al Locklear joined the game. (*Id.*) Locklear had a drink in his hand when he began playing and ordered several alcoholic drinks while playing the game. (*Id.*)

Kangarlou states that Locklear "kept losing money and inserted more $100 bills" into the slot machine, becoming "frustrated and furious for losing." (*Id.*) Locklear was using profanity, and when Kangarlou asked him to stop out of respect for the women who were present, Locklear allegedly continued cursing and made derogatory remarks to Kangarlou. (*Id.* at 3-4.) After a woman left the machine, Locklear allegedly became aggressive, blamed Kangarlou for his losses, and threatened to physically harm Kangarlou. (*Id.* at 4.) Kangarlou felt threatened and stood to look for security or a slot supervisor to intervene. (*Id.*) Kangarlou describes the situation that unfolded as follows:

> . . . before [Kangarlou could] locat[e] a casino staff [member], Locklear walked over and without warning socked [Kangarlou] on the right side of his face close to his temple. [Kangarlou] lost control and was pushed to the floor hitting his right knee to some object. Locklear mounted [Kangarlou's] back and kept punching [Kangarlou] in the head repeatedly with intent to kill [Kangarlou]. At no time did Locklear intend to stop as Mirage patrons told him "stop, that is enough." At one point someone stopped Locklear.

(*Id.*) Mirage security intervened and detained Locklear. (*Id.*)

Kangarlou suffered injuries to his face, head, hands, knee, back, tooth, ribs, stomach, and chest. (*Id.*) His vision was blurry following the attack. (*Id.*) Mirage security administered first aid and summonsed paramedics. (*Id.*) Paramedics transported Kangarlou to the emergency room, where he was treated by an emergency room physician and diagnostic imaging was performed in the emergency room. (*Id.*) He was referred to an ophthalmologist and has been evaluated by several eye specialists in hope of repairing his lost vision. (*Id.*) Kangarlou states he currently is under the care of a neuro-ophthalmologist. (*Id.*) Kangarlou also does physical therapy for his back and spine and is under the care of a neurosurgeon and may need surgery. (*Id.* at 4-5.) Kangarlou's medical bills exceed $40,000 and are growing. (*Id.* at 5.) Kangarlou also alleges the incident has caused him to suffer depression, sleep disturbances, mood swings, weight gain, and loss of self-esteem. (*Id.*) Kangarlou is under the treatment of a therapist for emotional distress. (*Id.*)

While at the emergency room, Kangarlou was interviewed by two police officers. (*Id.* at 4.) According to Kangarlou, the police officers informed him that casino video surveillance corroborated Kangarlou's version of the incident. (*Id.*) Kangarlou states that Locklear subsequently was arrested, charged with battery, pleaded guilty, and paid a fine. (*Id.*)

Locklear allegedly was in Las Vegas on the date of the incident because he was attending the 2016 National American Indian Housing Council's annual symposium that was held at the Mirage from December 5-7, 2016. (*Id.* at 3.) Kangarlou alleges Locklear was representing the Lumbee Tribe of North Carolina, which operates under several corporate entities including Lumbee Land Development, Inc. and Lumbee Tribe Holdings, Inc. (*Id.*) Kangarlou further alleges the tribe paid Locklear's expenses for the trip to Las Vegas. (*Id.* at 5.) Kangarlou states that after the incident, two representatives of the tribe contacted him seeking information about

the incident and offering to assist with his medical expenses, but they were "just phishing for information and were acting in bad-faith." (*Id.*) Kangarlou contends "Locklear has had a history of violence, aggression, false representation and intoxication as reported by the newspapers and citizens of Roberson County, North Carolina." (*Id.*)

Kangarlou now sues Locklear for assault, battery, and intentional infliction of emotional distress. (*Id.*) He also sues the Lumbee Tribe, Lumbee Land Development, and Lumbee Tribe Holdings for negligence, alleging they were on notice of Locklear's history of aggressive behavior and alcohol abuse and nevertheless sponsored him to represent the tribe and entities in Las Vegas. (*Id.* at 6.) Kangarlou brings the lawsuit based on diversity jurisdiction, stating the Lumbee Tribe "is an unincorporated Indian Tribe and has its principal place of business in the State of North Carolina." (*Id.* at 2.) Kangarlou further states Lumbee Land Development and Lumbee Tribe Holdings are incorporated under the laws of the State of North Carolina and have their principal place of business in North Carolina. (*Id.*) Kangarlou alleges the amount in controversy is more than $75,000, which includes medical bills in excess of $40,000 and damages for permanent vision loss in his right eye, spinal cord injury, loss of a tooth, and mental anguish. (*Id.* at 3.)

    *1. Diversity jurisdiction*

"Federal district courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *K2 Am. Corp. v. Roland Oil & Gas, LLC*, 653 F.3d 1024, 1027 (9th Cir. 2011) (quotation omitted). Federal district courts have original jurisdiction over civil actions in diversity cases "where the matter in controversy exceeds the sum or value of $75,000" and where the matter is between "citizens of different States." 28 U.S.C. § 1332(a)(1). "Section 1332 requires complete diversity of citizenship; each of the plaintiffs must be a citizen of a different state than each of the defendants." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Federal courts have the jurisdiction to determine their own jurisdiction. *Special Inv., Inc. v. Aero Air, Inc.*, 360 F.3d 989, 992 (9th Cir. 2004).

An unincorporated Indian tribe is not a citizen of any state within the meaning of the federal diversity statute, § 1332(a)(1), and therefore "cannot sue or be sued in diversity because

they are not citizens of any state." *Am. Vantage Co. v. Table Mountain Rancheria*, 292 F.3d 1091, 1095 (9th Cir. 2002), as amended on denial of reh'g (July 29, 2002). In adopting the majority view of other courts to have considered this question, the Ninth Circuit explains its threefold rationale as follows:

> First, as dependent domestic sovereign nations, Indian tribes are not state citizens. Second, despite ample opportunity, Congress has not seen fit to confer state citizenship on Indian tribes. Finally, because our holding is consistent with every other circuit to address this issue, we advance the interest of uniformity in a uniquely federal area of law.

*Id.* Thus, the presence of an unincorporated tribe destroys diversity. *Id.* at 1100; *Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*, 207 F.3d 21, 27 (1st Cir. 2000) (stating that "a tribe is analogous to a stateless person for jurisdictional purposes" and that "notwithstanding the joinder of other diverse parties, the presence of an Indian tribe destroys complete diversity") (citing 13B Charles Alan Wright et al., Federal Practice and Procedure § 3622, at 585–86 (1984)). But an Indian tribe may incorporate, in which case it may have state citizenship for diversity of citizenship purposes. *Cook v. Avi Casino Enterprises, Inc.*, 548 F.3d 718, 724 (9th Cir. 2008); *Am. Vantage Co.*, 292 F.3d at 1094 n.1.

Here, Kangarlou alleges the basis for subject-matter jurisdiction is diversity jurisdiction. Although he pleads the requisite amount in controversy, there is not complete diversity of the parties. Specifically, Kangarlou alleges he is a citizen of Nevada and defendant Locklear is a citizen of North Carolina. He also alleges the tribal corporations, Lumbee Land Development and Lumbee Tribe Holdings, are citizens of North Carolina. Notwithstanding the fact these parties are diverse, because Kangarlou joins the Lumbee Tribe, which he alleges is unincorporated, it destroys complete diversity. In other words, "the parties are not diverse within the meaning of § 1332(a)(1) because an Indian tribe is not a citizen of any state." *Am. Vantage Co.*, 292 F.3d at 1094. Given this jurisdictional defect, the court will dismiss Kangarlou's complaint with leave to amend.

### 2. Amendment

If Kangarlou chooses to amend, he must include factual allegations demonstrating diversity jurisdiction exists, thereby allowing the court to determine its own jurisdiction.

Additionally, Kangarlou is advised that if he files an amended complaint, the original complaint (ECF No. 1-1) no longer serves any function in this case. As such, if plaintiff files an amended complaint, each claim and the involvement of each defendant must be alleged sufficiently. The court cannot refer to a prior pleading or to other documents to make plaintiff's amended complaint complete. The amended complaint must be complete in and of itself without reference to prior pleadings or to other documents.

## II. CONCLUSION

IT IS THEREFORE ORDERED that plaintiff Saeid Sam Kangarlou's motion to proceed *in forma pauperis* (ECF No. 1) is GRANTED.

IT IS FURTHER ORDERED that the clerk of court must detach and separately file Kangarlou's complaint (ECF No. 1-2).

IT FURTHER ORDERED that Kangarlou's complaint is dismissed without prejudice for failure to plead facts invoking the court's diversity jurisdiction. Kangarlou's deadline to file an amended complaint is December 13, 2019. Kangarlou is advised that failure to comply with this order will result in a recommendation to the assigned United States district judge that this case be dismissed.

DATED: November 13, 2019

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE