UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| Saeid Sam Kangarlou,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>Alton Al Locklear, *et al.*,<br><br>　　　　Defendants. | Case No. 2:18-cv-02286-JAD-BNW<br><br>**Report and Recommendation re ECF No. 83** |

Before the Court is Defendants Alton Locklear, Lumbee Land Development, Inc., and Lumbee Tribe Holdings, Inc.'s Joint Motion to Enforce a Settlement Agreement.[1] ECF No. 83. Plaintiff Saeid Sam Kangarlou opposed at ECF No. 84, and Defendants replied at ECF No. 85.

As discussed below, because the Court finds that the parties did not agree on all material terms, it will deny Defendants' motion.[2]

**I.   Analysis**

　　**A.   Jurisdiction to Enforce the Settlement Agreement**

A federal court does not have inherent power to enforce settlement agreements entered into by parties. *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 967 (9th Cir. 2014). But it is "well established" that the court has authority to enforce a settlement agreement in litigation pending before it. *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994).

Here, because the litigation between the parties is pending before the Court, it has the authority to enforce a settlement agreement.

　　**B.   Enforcement of the Settlement Agreement**

The Court next considers whether an enforceable settlement agreement exists.

---

[1] Defendant Alton Locklear is represented by different counsel than Defendants Lumbee Land Development, Inc. and Lumbee Tribe Holdings, Inc. The Court will refer to Defendants Lumbee Land Development, Inc. and Lumbee Tribe Holdings, Inc. as the Lumbee Defendants.

[2] The Court does not need to conduct an evidentiary hearing in this case, as it has used the accompanying exhibits to resolve the parties' factual disputes regarding whether there was an enforceable settlement agreement as of January 6, 2022. *See Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987).

1

1  A settlement is a contract. *Knudsen v. Comm'r*, 793 F.3d 1030, 1035 (9th Cir. 2015)
2  (citing *Jeff D. v. Andrus,* 899 F.2d 753, 759 (9th Cir. 1989)). Both its construction and
3  enforcement are governed by principles of state contract law. *O'Neil v. Bunge Corp.*, 365 F.3d
4  820, 822 (9th Cir. 2004) (citations omitted).
5  Here, Nevada contract law governs the analysis because the parties are litigating the case
6  in this state.
7  Nevada law requires an offer and acceptance, meeting of the minds, and consideration to
8  constitute an enforceable contract. *May v. Anderson*, 121 Nev. 668, 672 (2005). "A meeting of
9  the minds exists when the parties have agreed upon the contract's essential terms." *Certified Fire*
10 *Prot. Inc. v. Precision Constr*., 128 Nev. 371, 378 (2012) (citation omitted). "Which terms are
11 essential [i.e., material] depends on the agreement and its context and also on the subsequent
12 conduct of the parties, including the dispute which arises and the remedy sought." *Id*. (internal
13 quotation marks and citation omitted).
14 Importantly, a contract can be formed even when the contract's exact language has not
15 been finalized so long as the parties have agreed to the material terms. *May*, 121 Nev. at 672. But
16 a court cannot enforce a settlement agreement when "material terms remain uncertain." *Id*. This
17 is because the court "must be able to ascertain what is required of the respective parties." *Id*.
18 Here, the parties dispute whether an enforceable settlement agreement exists. Defendants
19 argue that they entered into an enforceable contract on January 6, 2022, whereby Plaintiff agreed
20 to settle this matter in exchange for each set of Defendants paying him $30,000. ECF No. 83 at 4,
21 10. Plaintiff counters that no enforceable settlement agreement exists because Defendant
22 Locklear's decision to withhold $40,000 of the $60,000 settlement until Defendants received
23 authorization from Medicare and Medicaid was a new term that "was not discussed at the time of
24 settlement negotiations." ECF No. 84 at 4–5.
25 The Court agrees with Plaintiff and finds that an enforceable settlement agreement does
26 not exist. This is because the parties' e-mail exchanges reveal that they did not agree to the
27 material terms of the settlement agreement, namely the terms regarding how any potential
28

2

Medicare and Medicaid liens would be resolved as well as how and when the settlement proceeds would be disbursed. Put another way, the parties' conduct (through their e-mail exchanges) indicate there was no complete meeting of the minds.

As of January 6, 2022—the date that Defendants argue an enforceable settlement agreement was formed—all that the parties had agreed to was Defendants paying Plaintiff $60,000 in exchange for (1) a notarized release that included a mutual confidentiality clause, and (2) a stipulation to dismiss the case with prejudice:

> The Defendants hereby formally accept your December 22nd settlement offer and agree to pay you the sum of $60,000.00 (Mr. Locklear paying $30,000.00 and the Lumbee Defendants paying the other $30,000.00) with all Parties to bear their own attorney's fees and costs with relation to this litigation.[3]
>
> In exchange for the settlement amount, the Defendants will need a signed and notarized Release and Settlement Agreement, which contains a mutual confidentiality clause. Along with the Release and Settlement Agreement for the Defendants, Defendants will also need you to execute a stipulation and order to dismiss this matter with prejudice.

ECF No. 83 at 33. At this point, neither Plaintiff's offer nor Defendants' acceptance discussed or referenced any existing or potential liens. *Id*.

In this same e-mail, defense counsel provided Plaintiff with an opportunity to speak with them to "discuss and answer any questions or issues you may have." *Id*. Plaintiff did have some questions and asked for a follow-up call. *Id*. at 36 ("Can we set a time for tomorrow to clear [up] some questions?"). The call took place on January 12, 2022.[4] *Id*. at 40.

During this call,[5] the parties—for the first time[6]—discussed the issue of the potential Medicare and Medicaid liens and the effect on disbursement. *Id*. The e-mail memorializing this call reveals that counsel for Defendant Locklear anticipated possible revisions to the proposed

---

[3] Defendants note that this e-mail misrepresented the date of Plaintiff's settlement offer, which should have read December 23, not December 22. ECF No. 83 at 3.
[4] The contents of this call were memorialized in an e-mail exchange between counsel for Defendant Locklear and Plaintiff. *Id*. at 40. Counsel for the Lumbee Defendants was also copied on the e-mail. *Id*.
[5] Only Plaintiff and counsel for Defendant Locklear were present on this call. ECF No. 83 at 25.
[6] While Defendants suggest that the lien terms were always part of the settlement agreement and it is only when Plaintiff became aware of them that he decided to breach, this is not correct. ECF No. 85 at 1. There were no terms regarding any existing or potential, private or government liens at the time Defendants assert they accepted Plaintiff's offer on January 6. *Compare* ECF No. 83 at 33 *with* ECF No. 83 at 40.

3

agreement and the need to go back and forth regarding how potential Medicare and Medicaid liens would be addressed and how payment would be issued:

> This will confirm our conversation this afternoon that **in light of the potential for Medicare and/or Medicaid liens**, we can only release $20,000 of the total $60,000 in settlement proceeds to you next Monday. The remaining $40,000 of our global settlement can be released upon receipt of letters from Medicaid and Medicare. We will circulate a global settlement agreement either tomorrow or Friday **for your review and for review and approval and/or editing by Thomas Maroney on behalf of the Lumbee Tribe entities**. **Please confirm by email that we have an agreement on the settlement amount and the early release next week of the $20,000**, but we are trying to draft appropriate language for the hold back on the potential health care liens."

*Id.* (emphasis added).

While Plaintiff believed that there were no Medicare or Medicaid liens and that he would simply receive $30,000 from each Defendant upon signing the release, Defendant Locklear believed that he (and the other Defendants) were required by law to independently resolve these liens before providing Plaintiff with most of the $60,000 settlement. ECF No. 83 at 9, 55; ECF No. 84 at 7.

The resolution of liens is not a "mere formality." *May*, 121 Nev. at 674. As Defendants correctly point out, resolving a Medicare or Medicaid lien has legal consequences. ECF No. 83 at 9–10. And as evidenced by the parties' exchanges, *how* and *when* the liens would be resolved and *who* would resolve them constituted "an important reason" for whether Plaintiff would enter into a settlement agreement, as it informed *how much* of the $60,000 settlement proceeds he would receive and *when* he would receive this money. *May*, 121 Nev. at 674. From the outset of the negotiation process, which Plaintiff initiated, he expressed to Defendants his willingness to settle (and remain unrepresented) so that he could "save court and legal costs." ECF No. 83 at 29. If maximizing his settlement amount is one of the primary goals of settlement, the essential terms of Plaintiff's net-sum is material to the settlement agreement. *See May*, 121 Nev. at 674; *see also Grant v. Sears*, 379 S.W.3d 905, 918 (Mo. Ct. App. 2012) (reversing the district court and finding no enforceable settlement agreement where a plaintiff's conduct revealed that even

4

though she accepted the settlement amount, she had no appreciation that this amount would be conditional on outstanding liens).

Furthermore, and contrary to Defendants' position, this case is distinguishable from *Pate v. Wal-Mart Stores, Inc.*, where the Hon. Judge Dorsey found an enforceable settlement agreement. Judge Dorsey reasoned that the contested settlement term (i.e., the execution of a lien-verification form) was known to the parties throughout the negotiation process and that the plaintiff (who opposed enforcing the settlement agreement) never once challenged this term during the parties' series of e-mailed offers and counteroffers. *Pate v. Wal-Mart Stores, Inc.,* No. 212CV01377JADPAL, 2016 WL 8732077, at *2 (D. Nev. Apr. 15, 2016). Rather, the only term objected to during these negotiations was the monetary settlement figure. *Id*.

Here, and unlike the facts in *Pate*, the introduction of the Medicare and Medicaid liens coupled with the change in both the disbursement amount and disbursement schedule were not part of the original settlement negotiations and the January 6 agreement. ECF No. 83 at 33. Moreover, as soon as Plaintiff became aware of the change in settlement terms created by the (potential) liens, he objected. *Id*. at 53, 55.

To be clear, this is not a situation where, as Defendants argue, Plaintiff simply became "dissatisfied" with the terms of the agreement. ECF No. 83 at 2. Rather, this is a situation where Plaintiff and Defendants did not agree on several material terms, including how potential Medicare and Medicaid liens would be addressed; how the settlement money would be disbursed, and when the settlement money would be disbursed.

Moreover, this is a situation where even the *Defendants* had not yet reached a meeting of the minds regarding these material terms. *See* ECF No. 83 at 40 (January 12, 2022 e-mail where counsel for Defendant Locklear tells Plaintiff that the global settlement agreement would need to be reviewed, possibly edited, and approved by counsel for the Lumbee Defendants**)**; *see also* ECF No. 83 at 59 (January 14, 2022 e-mail where counsel for Defendant Locklear tells Plaintiff that counsel for the Lumbee Defendants will not review the draft of the global settlement agreement for a few days, and that once the latter does, defense counsel will e-mail the

agreement to Plaintiff for his review and comment).[7] And, as Plaintiff correctly points out, counsel for the Lumbee Defendants had not even reviewed—let alone approved—the proposed settlement agreement as of January 17, 2022, more than 10 days after the alleged settlement. ECF No. 84 at 7 (citing ECF No. 83 at 62).

Based on these facts, the Court concludes that the parties did not agree to all material terms on the record on January 6, 2022. As a result, it finds no enforceable settlement agreement between the parties and recommends to the District Judge that Defendants' motion be denied. *See First 100, LLC v. Omni Fin., LLC*, No. 216CV00099RFBCWH, 2016 WL 2980673, at *12 (D. Nev. May 23, 2016) (finding no enforceable settlement agreement where the context of the agreement and the parties' subsequent conduct revealed "that they continued to have substantial disagreements on certain terms" after the proposed agreement).

## II.    Conclusion and Recommendation

**IT IS THEREFORE RECOMMENDED** that Defendants' Joint Motion to Enforce a Settlement Agreement (ECF No. 83) be DENIED.

## III.    Notice

This report and recommendation is submitted to the United States District Judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within 14 days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: August 11, 2022.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE

---

[7] The e-mail reads as follows:
> As you may know, Mr. Maroney [counsel for the Lumbee Defendants] has multiple briefs and motions due today and Monday. I have sent him a draft of the global Settlement Agreement and he expects to review it on Tuesday. He won't have time today. Hopefully on Wednesday we can email you're [sic] the final draft for your review and comment after Mr. Maroney completes his review.

ECF No. 83 at 59.